UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
RICKEY McCLARENCE,

                              Plaintiff,        **MEMORANDUM AND ORDER**
                                                               16-CV-6614 (RRM) (LB)

    -against-

INTERNATIONAL UNION OF OPERATING
ENGINEERS LOCAL 14–14B,

                              Defendant.
-------------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff Rickey McClarence, an African-American heavy-machine operator, brings this *pro se* action pursuant to Title VII of the Civil Rights Act of 1964; 42 U.S.C. § 1981; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*, alleging that defendant Local 14–14B of the International Union of Operating Engineers ("the Local") discriminated against him on the basis of his race and color by refusing to allow him to resume his "permit" status after he was released from prison and excluding him from a training program. The Local now moves for summary judgment, principally arguing that McClarence cannot make out a prima facie case of discrimination and cannot establish that the Local's explanations for its actions are pretext for discrimination. McClarence has not opposed that motion. For the reasons set forth below, the Local's motion for summary judgment is granted and this action is dismissed without prejudice to raising the NYCHRL claims in state court.

I.    **Background**

      Unless otherwise indicated, the following facts are drawn from Defendant's Statement of Undisputed Material Facts Submitted Pursuant to Rule 56.1 (the "56.1 Statement") (Doc. No. 20) and/or documentary evidence attached to the Declaration of James M. Steinberg, Esq., in

Support of Defendant's Motion for Summary Judgment ("Steinberg Dec."), and are not in dispute.[1]  The Local is a labor organization representing heavy construction equipment operators throughout New York City.  (56.1 Statement, ¶ 2).  Together with the General Contractors Association of New York, Inc., the Local sponsors an apprenticeship program (the "Program") which involves classroom and on-the job-training for registered apprentices.  (*Id.*, ¶ 3).

McClarence became an apprentice in the Program in 2001.  (*Id.*, ¶ 4).  However, on March 7, 2003, following the indictment of several members of the Local, the General President of the International Union of Operating Engineers ("IUOE" or the "Union") placed a moratorium on the admission of new members into the Local pending development of a uniform admissions process.  (*Id.*, ¶ 5; Steinberg Dec., Ex. B).  That process was apparently not yet developed by 2005, when McClarence successfully completed and graduated from the Program.  (56.1 Statement, ¶¶ 6–7).  Because of the moratorium, McClarence could not apply for union membership.  (*Id.*, ¶ 7).  Instead, he was given "permit" status, which allowed him to work as an operating engineer within the Local's geographic jurisdiction and to seek work referrals at the Local's daily referral hall.  (*Id.*, ¶¶ 7, 11–12).

In a letter dated February 12, 2007, the General President of the IUOE lifted the moratorium.  (*Id.*, ¶ 15; Steinberg Dec., Ex. F).  Less than two months later, the President and Business Manager of the Local sent McClarence a letter, advising him how to apply for membership.  (56.1 Statement, ¶ 16; Steinberg Dec., Ex. G).  That letter stated, among other things, that drug testing was part of the "membership procedure," and that he needed to complete

---

[1] Plaintiff has not opposed Defendant's motion for summary judgment or filed his own Rule 56.1 statement controverting the undisputed facts set forth in the Local's 56.1 Statement.  Accordingly, the facts set forth in Defendant's 56.1 Statement are deemed admitted for purposes of this motion.  *See* Local Civil Rule 56.1(c).  The Court has reviewed the evidence cited by the Local in support of the 56.1 Statement to ensure that each statement of material fact on which the Court relies is supported by record evidence.  *See Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014).  The Court notes that most of the facts set forth in the 56.1 Statement are consistent with the allegations in Plaintiff's amended complaint.

the drug testing within three days of applying for membership. (56.1 Statement, ¶ 16; Steinberg Dec., Ex. G). On April 25, 2007, McClarence filed the membership application and submitted to drug testing. (56.1 Statement, ¶ 17; Steinberg Dec., Exs. H & I). However, on April 27, 2007, a doctor notified the Local that those tests proved positive for marijuana metabolites. (56.1 Statement, ¶ 18; Steinberg Dec., Ex. I).

Although the Local did not approve McClarence's membership application, it nonetheless continued him on "permit" status. (56.1 Statement, ¶¶ 18–19; Steinberg Dec., Ex. I). McClarence continued to work in that capacity until sometime in 2008 when "things started slowing down in the union." (56.1 Statement, ¶ 19 (quoting Deposition of Rickey McClarence ("McClarence Dep.") (attached to Steinberg Dec. as Ex. C), p. 85)). According to McClarence, "all the permit people [were] out of work" during this downturn, and even the union members were "probably … barely working." (McClarence Dep., p. 85).

In October 2009, McClarence was convicted of a gun-related offense in the Supreme Court of the State of New York, Kings County, and sentenced to two years' incarceration. (56.1 Statement, ¶ 20; McClarence Dep., pp. 100–03, 113). Upon his release from prison in 2011, McClarence moved to Philadelphia, Pennsylvania, and attempted to "transfer" to the IUOE Local in that city. (56.1 Statement, ¶¶ 21–22; McClarence Dep., pp. 100–03, 113). According to McClarence, he contacted Steve Nolan, the Local's training director, for assistance in obtaining a "permit number" that the Philadelphia local required. (McClarence Dep., pp. 113–14). Nolan stated that the Local did not have permit numbers and did not assist McClarence. (*Id.*, p. 114). McClarence never succeeded in working as an operating engineer in Philadelphia, working for Panera Bread instead. (56.1 Statement, ¶ 23; McClarence Dep., p. 100).

After 10 or 11 months at liberty, McClarence was convicted of marijuana possession in Philadelphia. (56.1 Statement, ¶ 24; McClarence Dep., pp. 100, 114–15). McClarence was re-incarcerated because of that conviction, then paroled upon conditions that prohibited him from leaving Pennsylvania. (56.1 Statement, ¶¶ 24–25; McClarence Dep., p. 117). As a result, McClarence did not return to New York until December 2013. (56.1 Statement, ¶ 26; McClarence Dep., p. 117). By that time, all the licenses and certifications that McClarence had obtained through 2009, including his Class C Hoist Machine Operator license and his HAZMAT certificate, had expired. (56.1 Statement, ¶ 30; McClarence Dep., p. 135).

McClarence assumed that he was still on "permit" status with the Local because he was still "able to operate" the machines and "never got kicked out of the union." (McClarence Dep., p. 115). Accordingly, sometime in January 2014, McClarence returned to the Local's training office and sat in on a class in an effort to renew his HAZMAT certificate. (*Id.*, p. 119). Just before the lunch break, Nolan appeared and told McClarence that he was not allowed to be there. (*Id.*). Nolan stated that he did not know McClarence's status with the Local, but McClarence insisted he was still on "permit" status, saying: "Why would it not be permit[?] What happened that it changed[?]" (*Id.*).

In June 2015, McClarence wrote a letter to Edwin L. Christian, the Business Manager of the Local, admitting that he "missed [*sic*] up with the union" by "failing [his] drug test back in 2007" and asking for "another chance." (Steinberg Dec., Ex. J). He represented that he "was a good permit worker," and "would love to get back with the union." (*Id.*). Despite his 2011 conviction, McClarence claimed to "have been clean of Marijuana [for] 8 years." (*Id.*). However, he also stated that he had "checked [himself] in to a drug program" from which he had

"graduated in 2014," and enclosed a copy of his certificate of completion from that program. (*Id.*).

Christian apparently did not respond to McClarence's letter for almost a year. On May 16, 2016, Christian sent McClarence a two-paragraph letter, noting that McClarence had never been a member of the Local. (Steinberg Dec., Ex. K). In the first paragraph, Christian recounted McClarence's history with the Local, acknowledging that he had graduated from the apprenticeship program but noting that his membership application had not been considered after McClarence failed the drug test in April 2007. (*Id.*). In a one-sentence, second paragraph, Christian concluded: "At this time, you have no affiliation with Local 14-14B as either a member or a permittee and Local 14 does not intend to consider you for permittee status in the future." (*Id.*).

**The Litigation History**

Shortly after receiving Christian's letter, McClarence filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that the IUOE discriminated against him because of his race and his conviction record, in violation of Title VII of the Civil Rights Act of 1964. On September 27, 2016, the EEOC dismissed that charge on the ground that it was "unable to conclude that further investigation would result in a finding that [IUOE] violated Federal law." (Letter to Rickey McClarence from Kevin J. Berry, District Director of the EEOC's New York District Office, dated Sept. 27, 2016 (attached to the Complaint (Doc. No. 1))). Less than 60 days later, McClarence, proceeding *pro se*, commenced this action against the Local.

McClarence's original pleading consisted of a completed form entitled "Complaint for Employment Discrimination." In a section entitled "Basis for Jurisdiction," McClarence

checked a box to indicate that he was bringing this action pursuant to Title VII. (Compl., § II). In the next section – entitled "Statement of Claim" – he specified that the Local was discriminating against him because of his race, color, and his conviction record. (*Id.*, § III(D)). In that same section, McClarence described the allegedly discriminatory conduct by checking boxes labeled "Failure to hire me" and "Termination of my employment." (*Id.*, § III.(A)). He also alleged that the discriminatory conduct began on May 16, 2016, and was still continuing. (*Id.*, § III(C)).

McClarence's description of the facts of his case, however, did not suggest race discrimination. To the contrary, McClarence stated that even though he failed a drug test on April 27, 2007, he was permitted to "work thru the union" without discrimination until he went to prison in 2009. (*Id.*, § III€). However, when he completed his sentence, the Local "would not let [him] continue to work thru the union." (*Id.*).

In a memorandum and order dated September 5, 2017 (the "Prior Order") (Doc. No. 5), the Court dismissed the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim. The Court noted that the Complaint did not even allege that McClarence was a member of a protected class, much less allege that he was discriminated against on the basis of his membership in that class. (Prior Order, pp. 3–4). However, the Court granted McClarence leave to amend his pleading within 30 days.

**The Amended Complaint**

On October 5, 2017, McClarence filed an amended complaint, using a slightly different form complaint, to which McClarence attached a five-page addendum containing detailed factual allegations. By checking boxes on the form, McClarence indicates that he is alleging claims under Title VII, § 1981, the NYSHRL, and NYCHRL. He also specifically alleges that he is an

6

African-American and that the Local "did not hire" him and provided him "with terms and conditions of employment different from those of similar employees" because of his race and color. (*Id.*, §§ III(A) & IV(A)).

His addendum, however, contains no non-conclusory allegations to substantiate that allegation. That addendum alleges only that the Local is predominantly male and white and that the Local's leadership, at all times relevant to this action, was comprised exclusively of white men. (*Id.*, Addendum, ¶¶ 3–4). However, the Addendum also alleges that the Local hired him into an apprenticeship program that "was designed to increase racial minority membership in the Union." (*Id.*, ¶¶ 2, 5).

The addendum alleges that "the Union rulebook had a procedure for handling failed drug tests, including referral to drug counseling and the opportunity to re-take the drug test," and that McClarence was "not allowed to do either." (*Id.*, ¶ 15). However, while it alleges that McClarence attended drug counseling on his own and provided a certificate of completion to the Local, (*id.*, ¶ 16), the addendum does not allege that McClarence ever sought to re-take the drug test or re-applied for admission to the Union. (*Id.*, ¶ 15). Rather, it implies that he had no need to do so because he was placed "on permit" from 2007 to 2009, enabling him to continue working Union jobs without being a member of the Union. (*Id.*, ¶ 17).

To be sure, the addendum implies that McClarence may have taken steps to apply for admission sometime after his return to New York in late 2013. The addendum alleges that McClarence spoke to the head secretary of the Local, who informed him that, under a "'new rule' for processing a union membership application," he "would be required to submit to a background check." (*Id.*, ¶¶ 27–28). Although McClarence believed that "a background check is not, and never was, a requirement for membership in the Union" or "for continuing to work as

7

a permittee," he nonetheless submitted to a background check. (*Id.*, ¶¶ 29–31). After the background check revealed his criminal record, the Local continued to give him "the run-around," which prevented him "from returning to the Union school to renew [his] certificates and licenses." (*Id.*, ¶ 33).

The addendum concludes by alleging that both McClarence's convictions and his race "played into stereotypes about black men held by some of the white Union leadership." (*Id.*, ¶ 35). It asserts that because of his convictions and race, the Local no longer wanted him to work "on permit," as he had from 2007 to 2009, (*id.*, ¶ 36), and "prohibited [him] from becoming a member, using [the] 2007 failed drug test as a pretext for race discrimination," (*id.*, ¶ 37). However, the addendum does not specifically allege that McClarence ever applied for, and was denied, membership in the Local, much less that the specific Union officers who denied him membership were among those Union leaders who believed the negative stereotypes.

**The Instant Motion**

On July 27, 2018, after the close of discovery, the Local moved for summary judgment. That motion consists of a Notice of Motion, which attaches a "Notice to Pro Se Litigant Who Opposes Summary Judgment" (Doc. No. 19); the 56.1 Statement; a Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Local's Memo") (Doc. No. 23); the Steinberg Declaration; and an Affidavit of Edwin L. Christian ("Christian Aff.") (Doc. No. 21), which explains, among other things, who is entitled to attend the Local's training programs and the history of "permit" status.

The Local's Memo raises four points. First, applying the tripartite, burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to McClarence's Title VII, § 1981, and NYSHRL claims, the Local argues that McClarence cannot

8

make out a prima facie case of discrimination. Citing to cases analyzing Title VII employment discrimination claims, the Local asserts that McClarence must establish four elements to make out a prima facie case: "that he 1) is a member of a protected class; 2) was qualified for the position held; 3) suffered an adverse employment action; and 4) the surrounding circumstances give rise to an inference of discriminatory intent." (Local's Memo, p. 11 (citing *McDonnell Douglas*, 411 U.S. at 802, *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004), and *Collins v. N.Y.C. Transit Auth.*, 305 F.3d 113, 118 (2d Cir.2002))). While the Local concedes that McClarence can establish the first of these four elements, (*id.*, p. 11), it argues that he cannot make out the remaining three. Specifically, the Local argues that McClarence 1) "was neither qualified to participate in Local 14's training and skill improvement classes nor appropriately licensed and credentialed to seek employment through the union's daily referral hall," (*id.*); 2) did not "suffer an adverse employment action since he had no ties to Local 14 from which he could be adversely affected," (*id.*, p. 14); and 3) has not established "that he was treated less favorably than 'similarly situated' individuals outside of his protected group," (*id.*).

Second, the Local argues that it had "legitimate, non-discriminatory reasons for denying Plaintiff access to its resources." (*Id.*, p. 15). Relying on the Christian Affidavit, the Local states that its training classes are available only to the Local's members, registered apprentices, and "persons actively working in [the Local's] jurisdiction … through 'permit' status." (*Id.* (citing Christian Aff., ¶ 9)). The Local argues that McClarence was never a member of the Local, was no longer a registered apprentice after he graduated from the apprenticeship program in 2007, and "abandoned his 'permit' status some time in 2008 when he decided to stop seeking referrals through [the Local's] daily referral hall." (*Id.*, p. 16). In addition, the Local argues that it had the "right to no longer consider Plaintiff for 'permit' status" because, among other things,

9

McClarence had abandoned "his license and certifications which are prerequisites required to work on construction sites within the jurisdiction" of the Local. (*Id.*, p. 18).

Third, the Local argues that both the NYSHRL and NYCHRL claims should be dismissed. With respect to the state-law claim, the Local argues that the standards for analyzing Title VII and NYSHRL claims are the same. (*Id.*). With respect to the city-law claim, the Local argues that "there is simply no evidence of any discrimination" against McClarence. (*Id.*, p. 19).

Fourth, the Local argues that any causes of action arising from the denial of his 2007 membership application is time-barred. The Local notes that any Title VII action arising from that event is time-barred because McClarence did not file a charge of discrimination with the EEOC within 300 days after the allegedly discriminatory event. In addition, the Local notes that § 1981 claims are subject to a four-year statute of limitations, while claims under the NYSHRL and NYCHRL are subject to a three-years limitations period.

Although the Local provided McClarence with a "Notice to Pro Se Litigant Who Opposes Summary Judgment" that complies with the requirements of Local Civil Rule 56.2 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (Doc. No. 19-1), McClarence has not opposed the Local's motion for summary judgement.

II. **Standard of Review**

Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

10

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018) (quoting *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013)). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009). "In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Id.*

"Rule 56 does not allow district courts to automatically grant summary judgment on a claim simply because the summary judgment motion, or relevant part, is unopposed." *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014). "[T]he failure to respond to the motion does not alone discharge the burdens imposed on a moving party." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004). "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented." *Wilson v. Air Serv Corp.*, 705 F. App'x 43, 44 (2d Cir. 2017) (summary order) (quoting *Vermont Teddy Bear Co.*, 373 F.3d at 244). In addition, "the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Id.* (quoting *Vermont Teddy Bear Co.*, 373 F.3d at 242).

In deciding this motion, the Court is mindful that the Second Circuit has repeatedly stated that "special solicitude should be afforded *pro se* litigants generally, when confronted with motions for summary judgment." *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) (citing *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988)); *see Ruotolo v. I.R.S.*, 28

11

F.3d 6, 8 (2d Cir. 1994) ("Recognizing that the Ruotolos were acting *pro se*, the district court should have afforded them special solicitude before granting the IRS's motion for summary judgment."). To that end, the Court has ascertained that the "Notice to Pro Se Litigant Who Opposes Summary Judgment" satisfies the requirements of Local Civil Rule 56.2 and was served on McClarence along with the motion papers.

III. **Discussion**

   A. **Title VII**

      1. **The *McDonnell Douglas* Framework**

"The Supreme Court's decision in *McDonnell Douglas* 'established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases.'" *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 128 (2d Cir. 2012) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)). The *McDonnell Douglas* framework applies to Title VII discrimination claims against unions, regardless of whether the union is sued as an "employer" or a "labor organization." *See Daniels v. Health Ins. Plan of Greater N.Y.*, No. 02-CV-6054 (HB), 2007 WL 27115, at *7 (S.D.N.Y. Jan. 4, 2007) (applying *McDonnell Douglas* in analyzing a Title VII wrongful termination claim); *Garcia v. N.Y. Racing Ass'n, Inc.*, No. 1:10-CV-01092 (LEK), 2011 WL 3841524, at *11 (N.D.N.Y. Aug. 29, 2011) (applying *McDonnell Douglas* in analyzing a Title VII claim against a labor organization pursuant to 42 U.S.C. § 2000e-2(c)(1)); *see also Beck v. United Food & Commercial Workers Union, Local 99*, 506 F.3d 874, 882 (9th Cir. 2007) (stating that *McDonnell Douglas* "applies to a Title VII action against a union").

At the first step of the *McDonnell Douglas* framework, "a 'plaintiff must prove by a preponderance of the evidence a *prima facie* case' of discrimination …." *Rakowsky v. Nielsen*,

744 F. App'x 743, 744 (2d Cir. 2018) (summary order) (quoting *D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 195 (2d Cir. 2007)). "The plaintiff's burden of proof as to this first step has been characterized as minimal and *de minimis*." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (internal quotations marks and citation omitted). "However, it is not non-existent and [s]ummary judgment must be granted whenever the undisputed facts, viewed most favorably to the non-moving plaintiff, do not make a prima facie case." *Robles v. Cox & Co.*, 987 F. Supp. 2d 199, 206 (E.D.N.Y. 2013) (internal quotation marks omitted).

At the second *McDonnell Douglas* stage, the defendant has "the burden of producing an explanation to rebut the prima facie case—i.e., the burden of 'producing evidence' that the [defendant's allegedly discriminatory] actions were taken 'for a legitimate, nondiscriminatory reason.'" *Bucalo*, 691 F.3d at 128–29 (quoting *Hicks*, 509 U.S. at 506–07). If "the defendant satisfies its burden of production," the burden shifts back to the plaintiff, who must "demonstrate that the proffered reason was not the true reason for the employment decision." *Id.* at 129. If the plaintiff fails "to show that there is evidence that would permit a rational factfinder to infer that the [defendant's] proffered rationale is pretext, summary judgment dismissing the claim is appropriate." *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (citing *Smith v. Am. Express Co.*, 853 F.2d 151, 154–55 (2d Cir. 1988) (affirming summary judgment in light of plaintiff's failure to present more than conclusory and substantially unsupported assertions that employer's proffered race-neutral rationale for denial of promotion was pretext)).

2. **Prima Facie Case**

In order to determine if McClarence has met his burden at the first step of the *McDonnell Douglas* analysis, the Court must first determine the elements McClarence must prove by a preponderance of the evidence in order to make out a prima facie case. This determination is

complicated by the fact that "a union may fall within the definitions of both 'employer' and 'labor organization'" for purposes of Title VII, *Yerdon v. Henry*, 91 F.3d 370, 375 (2d Cir. 1996), and that this case involves McClarence's exclusion from a "training program."

"Title VII protects all employees of and applicants for employment with a covered employer, … labor organization, or training program against discrimination based on race, color, religion, sex, or national origin." *Gen. Tel. Co. of the Nw. v. Equal Emp't Opportunity Comm'n*, 446 U.S. 318, 323 (1980). Under 42 U.S.C. § 2000e-2(a)(1), it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Under 42 U.S.C. § 2000e-2(c), it is unlawful for a labor organization:

> (1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;
> (2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or
> (3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

Under 42 U.S.C. § 2000e-2(d), it is unlawful "for any employer, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs to discriminate against any individual because of his race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide apprenticeship or other training."

The elements of a prima facie Title VII claim appear to be essentially the same, regardless of whether the claim is brought under section (a)(1), (c), or (d) of §2000e-2. The elements under section (a)(1) are well established: a plaintiff must show "that: (1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802). The Second Circuit has used essentially the same elements in addressing a claim under section (d), requiring the plaintiff to "prove that '(1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class.'" *La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 211 (2d Cir. 2010) (quoting *Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir.2005)).

The elements of a prima facie case under subsection (c) are not as well established. The Court's research did not find any cases in this Circuit brought under section (c)(2), and "[v]ery few cases have been brought where plaintiffs seek to hold a union defendant liable under either sections 2(c)(1) or 2(c)(3) of 42 U.S.C. § 2000e." *Byars v. Jamestown Teachers Ass'n*, 195 F. Supp. 2d 401, 411 (W.D.N.Y. 2002). However, in one of the few cases that has analyzed claims under subsections (c)(1) or (c)(3), the court used the elements set forth by the Second Circuit in a discrimination case alleging discriminatory discharge: "(1) that [s]he belongs to a protected class; (2) that [s]he was performing [her] duties satisfactorily; (3) that [s]he was discharged; and (4) that [her] discharge occurred in circumstances giving rise to an inference of discrimination on

15

the basis of [her] membership in that class." *Id.* at 412 (quoting *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (alterations added in *Byars*).

In this case, the only adverse employment decisions or actions alleged by McClarence are the removal of his "permit" status and his exclusion from a training class. However, the latter is actually a consequence of the former; if McClarence had been in "permit" status and actively working in the Local's jurisdiction, he would have had access to that class. (*See* Christian Aff., ¶ 9). Although McClarence was denied membership in the Local in 2007, McClarence is not contesting that decision and does not allege that he ever re-applied for membership. Moreover, as the Local correctly notes, any Title VII claims relating to the Local's 2007 actions would be time-barred. Before an individual may bring a Title VII claim in federal court, the claim "must first be presented in a complaint to the EEOC or the equivalent state agency." *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (citing 42 U.S.C. § 2000e-5). That complaint "must be filed with the EEOC within 300 days of the alleged discrimination in a state, like New York, with a fair employment agency." *Pikulin v. City Univ. of New York*, 176 F.3d 598, 599 (2d Cir. 1999) (citing 42 U.S.C. § 2000e-5(e)). McClarence did not file his charge of discrimination with the EEOC until sometime in 2016.

Assuming that the removal of "permit" status constitutes an adverse employment decision or action, McClarence cannot make out a prima facie case with respect to this action. First, the undisputed evidence establishes that McClarence was not qualified for "permit" status upon his return to New York. All of the licenses and certifications that McClarence needed to work as an operating engineer in New York, including his Class C Hoist Machine Operator license and his HAZMAT certificate, had expired by 2014. (56.1 Statement, ¶ 30; McClarence Dep., p. 135). There is no evidence that McClarence reacquired these credentials at any point

subsequent to his return to New York. Without those credentials, McClarence could not have worked on "permit" status.

Second, there is no evidence of circumstances giving rise to an inference of race or color discrimination. To the contrary, McClarence's involvement with the Local began with his admission to an apprenticeship program which, McClarence himself claims, was "designed to *increase* racial minority membership in the Union." (Am. Compl., Addendum, ¶ 5 (emphasis added)). When McClarence failed the drug test in April 2007, the Local's representatives were not happy; by McClarence's own account, "they were furious" and "upset." (McClarence Dep., p. 94). Nonetheless, they permitted him to work on "permit" status thereafter, even though he was no longer eligible for membership in the Local. Although the Local was no longer willing to afford him "permit" status when he returned to New York in 2014, there is no evidence to suggest that this decision had anything to do with McClarence's race or color.

### 3. Non-discriminatory Reasons

In their motion papers, the Local has produced evidence of non-discriminatory reasons for removing McClarence from permit status. As Christian states in his affidavit, "permit" status was originally used by the Local "to give members from other operating engineer locals the *temporary* right to work within its jurisdiction." (Christian Aff., ¶ 5 (emphasis added)). That status was afforded members of McClarence's apprenticeship class after a moratorium was placed on admissions so that the Local "could address the increase in demand for operating engineers by having workers available for job referrals through the daily referral hall." (*Id.*). However, as McClarence noted during his deposition, that demand had dissipated by 2008. (McClarence Dep., p. 85). Under those circumstances, the "permit" workers were no longer needed to enable the Local to "continue to fulfill its obligation under its collective bargaining

17

agreements to refer skilled heavy construction equipment operators to contractors as needed." (Christian Aff., ¶ 5).

Christian's explanation of why McClarence was excluded from the HAZMAT training program in 2014 further highlights the economic calculus underlying the Local's actions. In his affidavit, Christian explains that only three classes of individuals can attend those programs: "a dues paying member of the union; a registered apprentice that takes these classes as part of the apprenticeship program's curriculum; or an individual with 'permit' status who was actively working in [the Local's] jurisdiction …." (Christian Aff., ¶ 9). Persons in the third category indirectly pay for the lessons because they receive "fringe benefit contributions" from the contractors who employ them, and a "component of these fringe benefit[s] … fund[s] the cost of skill improvement classes conducted" by the Local. (*Id.*).

McClarence has not introduced any evidence that Christian's economic explanations for discontinuing McClarence's "permit" status and excluding him from the training class were a pretext for discrimination. Rather, McClarence appears to assume that "permit" status, once given, is like a union membership for which no dues need ever be paid, permanently affording recipients access to the referral hall. (*See* McClarence Dep., p. 119 (stating that when Nolan asked him to leave the training session in January 2014, McClarence insisted he was still on "permit" status, saying: "Why would it not be permit[?] What happened that it changed[?]")). He further assumes that removal of this status must have something to do with his race or color. In his complaint, McClarence alleged that "some of the white Union leadership" believe negative "stereotypes about black men." (Am. Compl., Addendum, ¶ 35). However, when asked at his deposition if there were "specific stereotypes that Steve Nolan had about African Americans, based on your experience with him," McClarence did not testify to any such experiences.

18

Rather, he responded: "Well, I know that I'm an African American person and I'm going through the BS of whatever this union is sending me through. So that's my information."

In sum, McClarence has not adduced any evidence to establish that the Local's legitimate, economic rationale for ending McClarence's "permit" status and for denying him access to the training program is a pretext for discrimination. McClarence's Title VII claim is dismissed.

### B. The Remaining Claims

"The standard of proof for claims brought under § 1981 and the NYSHRL is identical to that of Title VII claims." *Vargas v. Morgan Stanley*, 438 F. App'x 7, 9 n.1 (2d Cir. 2011) (citing *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 491–92 (2d Cir. 2010) (addressing § 1981 claims); *Torres v. Pisano*, 116 F.3d 625, 629 n. 1 (2d Cir. 1997) (addressing NYSHRL claims)). Like claims under Title VII, claims under the § 1981 and the NYSHRL are analyzed under the *McDonnell Douglas* framework. *See Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 65–66 (S.D.N.Y. 2016); *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 209 (E.D.N.Y. 2014). Moreover, "[t]he elements of a *prima facie* case of discrimination are essentially the same whether the claim is brought under Section 1981, Title VII, … or the NYSHRL." *Bhanusali v. Orange Reg'l Med. Ctr.*, No. 10-CV-6694 (CS), 2013 WL 4828657, at *5 n.11 (S.D.N.Y. Aug. 12, 2013), *aff'd in part, vacated in part on other grounds*, 572 F. App'x 62 (2d Cir. 2014). Accordingly, MCC's § 1981 and NYSHRL claims are dismissed on the same grounds as his Title VII claim.

In contrast, "NYCHRL claims are properly analyzed 'separately and independently' from … NYSHRL claims," and claims under Title VII and § 1981. *McDonnell v. Schindler Elevator Corp.*, 618 F. App'x 697, 700 (2d Cir. 2015) (summary order) (citing *Mihalik v. Credit Agricole*

*Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013)). A district court may "decline to exercise supplemental jurisdiction over a claim ... if the district court has dismissed all claims over which it has original jurisdiction ...." 28 U.S.C. § 1367(c)(3). Given that all federal claims have been dismissed, the Court, in its discretion, declines to exercise supplemental jurisdiction over the NYCHRL claim and dismisses that claim without prejudice to refiling in state court.

## CONCLUSION

For the reasons set forth above, the defendant Local's motion for summary judgment is granted with respect to plaintiff McClarence's claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the New York State Human Rights Law. Those claims are dismissed with prejudice. The Court declines to exercise supplemental jurisdiction with respect to the claim brought pursuant to the New York City Human Right Law and dismisses that claim without prejudice to refiling it in state court. The Clerk of Court is directed to enter judgment in accordance with this Memorandum and Order and to close this case. The Clerk of Court shall also send a copy of the judgment and this Memorandum and Order to McClarence at the address listed for him on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
      March 18, 2019

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge